UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| TYGANDA GILMORE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 16-286-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| J. RAY ORMOND, Warden, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Lieutenant Leroy Chaney has filed a motion to dismiss Plaintiff Tyganda Gilmore's Complaint, contending that Gilmore did not exhaust his administrative remedies as required by federal law. [Record No. 27] Gilmore responds that threatening behavior and a refusal to provide him with the necessary forms rendered the inmate grievance system "unavailable" to him. [Record No. 29] The matter is now ripe for the Court's review.

## I.

Gilmore asserts that, on August 23, 2016, he refused to submit to hand restraints during a cell extraction. As a result, he contends that Lieutenant Chaney intentionally used an excessive amount of pepper spray to compel his compliance. [Record No. 1 at Page ID # 8, 13] Gilmore also contends that, on October 25, 2016, Lieutenant Chaney and another officer threw a pair of handcuffs into his cell. And when he refused to "cuff up," Gilmore alleges the officers entered the cell and "rough[ed] [him] up," throwing him to the ground, pushing his head into the floor, punching him in the back of the head, and getting in "cheap shots" while he was restrained. Gilmore further alleged that after he was moved into the hallway, Chaney

pressed his head hard against the wall and bent his hands against the tightened handcuffs. Gilmore claims that as a result of this incident he suffered bruises, cuts, marks, soreness and "emotional damage." [Record No. 1 at Page ID # 5, 7-8, 14]

Gilmore alleges that he told the warden "numerous times" that Lieutenant Chaney was dangerous, was trying to force him to accept a cellmate, and had used an excessive amount of pepper spray to subdue him. [Record No. 1 at Page ID # 4-5] On appeal to the United States Court of Appeals for the Sixth Circuit, Gilmore expanded upon this allegation:

> Mr. Ray Ormond, Warden, [knew] of the dangerous, Mr. Chaney ... on mention dates, I brought to the attention of the misconduct of Mr. Chaney to Warden, and after the fact, on numerous request on this matter to warden same outcome, nothing was done.... [The warden] also allowed [Chaney] to not use hand-extraction-camera when he threw cuffs in cell.

*Gilmore v. Ormond*, No. 16-6839 (6th Cir. 2016) [R. 14 therein at p. 6].[1]

Gilmore also asserted in his Complaint that he filed inmate grievances at the institutional, regional, and national levels regarding several issues [Record No. 1 at Page ID # 20-22], although he does not clearly indicate whether those grievances encompassed his allegations against Lieutenant Chaney. However, on appeal in this matter, Gilmore affirmatively alleged that he filed inmate grievances regarding Chaney's conduct: "... the warden is in violation [be]cause I warn [the warden] numerous time of the dangerous guards threatening and abuse. Plaintiff explain misconduct, personally to warden and through remedy procedures, to no avail or actions done."). *Gilmore v. Ormond*, No. 16-6839 (6th Cir. 2016)

---

[1] A court may take judicial notice of undisputed information contained on government websites. *Demis v. Sniezek*, 558 F. 3d 508, 513 n.2 (6th Cir. 2009). Records and information on government websites are self-authenticating. Fed. R. Evid. 902(5); *Qiu Yun Chen v. Holder*, 715 F.3d 207, 212 (7th Cir. 2013) ("A document posted on a government website is presumptively authentic if government sponsorship can be verified by visiting the website itself.").

[R. 21 therein at p. 7]. Gilmore also stated that, on October 27, 2016, he provided and signed a written statement to a "S.I.A. Investigator" setting forth his allegations of misconduct by Lieutenant Chaney. The internal affairs investigator told Gilmore that his statement would be forwarded to the "O.I.G. or F.B.I." for investigation, but refused his request to receive a copy. [Record No. 1 at Page ID #19]

Lieutenant Chaney asserts in his motion to dismiss the Complaint that Gilmore has filed numerous inmate grievances in recent years, but none relate to the incidents described in the Complaint. Therefore, he contends that Gilmore failed to exhaust his administrative remedies as required by federal law. [Record No. 27-1 at Page ID # 273-77] This contention is supported by the declaration of Robin Eads, a paralegal employed by the Bureau of Prisons' Consolidated Legal Center, who confirms that Gilmore filed no inmate grievances regarding the conduct about which he complains. [Record No. 27-2 at Page ID # 278-80] And an attached summary of grievances filed by Gilmore indicates that he has filed several formal grievances regarding alleged staff misconduct and threatening behavior, both before and after the events in question. [Record No. 27-2 at Page ID # 296, 299, 300, 301, 303]

Gilmore claims for the first time in his response that he was prevented from filing an inmate grievance because BOP staff threatened him. [Record No. 29 at Page ID # 317-18] But at no point does Gilmore identify who allegedly threatened him, with what he was threatened, or when the alleged threat was made. Notwithstanding the alleged threat, Gilmore states that the warden "relieved [Chaney] of his duties" shortly after the October 2016 cell extraction. [Record No. 29 at Page ID # 320] He also repeats his allegation that, presumably in response to Gilmore's complaints, an internal affairs officer took his statement and

commenced an investigation just two days after the incident. [Record No. 29 at Page ID # 321] These allegations undermine any suggestion that staff were attempting to dismiss or cover up his claims against Chaney.

Gilmore also contends that a staff member refused to provide him with the necessary grievance forms. But as before, he does not provide any specifics regarding this interaction. Gilmore then contradicts his own assertion, stating that he actually did file a grievance but that an unnamed officer refused to process it:

> Basically after and before, staff denied (*sic*) me access [to] remedy forms or when I did get forms and filled them out about the two claims in this matter the BP-8 and BP-9 was not return or even process on these incident in this case. The case-manager plainly stated I'm not turning this in period.

[Record No. 29 at Page ID # 322] This allegation is also at odds with Gilmore's prior statement that he made the warden aware of Lieutenant Chaney's conduct by filing an inmate grievance. *Gilmore v. Ormond*, No. 16-6839 (6th Cir. 2016) [R. 21 therein at p. 7].

## II.

As a threshold matter, Lieutenant Chaney's assertion that Gilmore failed to exhaust his administrative remedies is not properly asserted in a motion to dismiss. It is true that a complaint is subject to dismissal for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure where the failure to exhaust administrative remedies is apparent from the face of the complaint. *Shah v. Quintana*, No. 17-5053, 2017 WL 7000265, at *1 (6th Cir. July 17, 2017) (citing *Jones v. Bock*, 549 U.S. 199, 214-15 (2007)); *Barnett v. Laurel Co., Ky.*, No. 16-5658, 2017 WL 3402075, at *1 (6th Cir. Jan. 30, 2017). But Gilmore's Complaint reveals no such deficiency, and Chaney does not assert otherwise. Rather, Chaney relies upon documentary proof and an affidavit [Record No. 27-2] in an effort to establish that Gilmore

did not file grievances regarding the events described in his Complaint. Therefore, where such materials are presented as grounds for decision upon the motion, the Court must treat the motion as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F. 3d 1102, 1104 (6th Cir. 2010).

When a court converts a motion to dismiss to a motion for summary judgment under such circumstances, prior notice to the responding party may be appropriate, but is not necessary where the responding party would not be surprised by the conversion or has otherwise been afforded a reasonable opportunity to present material pertinent to the motion. *Id*. at 1104; *Bruce v. Corr. Med. Services, Inc.*, 389 F. App'x 462, 465 (6th Cir. 2010). Here, the Court finds that Chaney's inclusion of documentary evidence and an affidavit in support of his motion provided Gilmore with adequate notice that he could file such materials in his response to the motion. The Court will also exercise its discretion and the liberality afforded to *pro se* litigants, *Haines v. Kerner*, 404 U.S. 519, 596 (1972), to treat Gilmore's unsworn allegations in his response [Record No. 29] as if set forth in an affidavit or declaration, thus rendering inapplicable the usual rule that "... a motion for summary judgment may not be defeated by factual assertions in the brief of the party opposing it, since documents of this nature are self-serving and are not probative evidence of the existence or nonexistence of any factual issues." *Garvey v. Montgomery*, 128 F. App'x. 453, 462 n.6 (6th Cir. 2005) (quoting *Banks v. Rockwell Int'l N. Am. Aircraft Operations*, 855 F. 2d 324, 325 n.1 (6th Cir. 1988)).

Where the failure to exhaust is not self-evident from the complaint, "[s]ummary judgment is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir.

2011) (quoting Fed. R. Civ. P. 56(a)). The Court must consider the evidence "in the light most favorable to the party opposing the motion.'" *Id*. (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)). Nonetheless, the defendants can prevail if they can "prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Mattox v. Edelman*, 851 F. 3d 583, 590 (6th Cir. 2017) (citing *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012)); *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Federal law requires a prisoner to fully utilize the prison's inmate grievance system before filing suit to assert a civil claim regarding the conditions of his confinement. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). This requirement applies to any claim that arises out of any aspect of prison life, whether it involves general circumstances or particular episodes, and whether it alleges excessive force or some other wrong. *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Because "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ...", *Woodford v. Ngo*, 548 U.S. 81, 90 (2006), a prisoner must file an initial grievance and any appeals within the time frames required by the prison's grievance procedure.

In the present case, Gilmore concedes that he did not fully exhaust his administrative remedies, but offers contradictory explanations for that failure: he contends that he did not file a grievance because he "was threaten then about same issue, this was after the claims in this present action," or that he did not file a grievance because BOP staff withheld grievance forms, or that he did actually file a grievance but that BOP staff refused to process it. [Record No. 29 at Page ID # 317-18, 320, 322] Having reviewed the documents presented and the contentions

of the parties, the Court concludes that "no reasonable jury could find that the plaintiff exhausted his administrative remedies," and summary judgment is warranted.

Gilmore effectively contends through his allegations that the BOP's Inmate Grievance System was rendered "unavailable" to him. [*See* Record No. 29 at Page ID # 317.] Section 1997e(a) requires a grievance system to be "available" to inmates, but that means only that it must be "capable of use to obtain some relief for the action complained of." *Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1859 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 737 (2001)). A grievance process may be "unavailable" where, for example, prison officials prevent inmates from filing grievances through intimidation or misrepresentation. *Ross*, 136 S. Ct. at 1860.[2] Of course, a prisoner must make a meaningful effort to follow the grievance process before the asserted unavailability of the procedure becomes relevant. *Napier v. Laurel Cnty.*, 636 F.3d 218, 223-24 (6th Cir. 2011).

Gilmore's allegation that he did not file an inmate grievance because BOP staff threatened him is unavailing. As previously noted, he made no allegations regarding who

---

[2] It is unclear whether a prisoner who contends that the grievance system was not "available" to him bears the burden of proof with respect to that claim, or whether prison officials must demonstrate such availability as part of their broader burden to demonstrate non-exhaustion . Compare *Tuckel v. Grover*, 660 F. 3d 1249, 1254 (10th Cir. 2011) ("Defendants thus bear the burden of asserting and proving that the plaintiff did not utilize administrative remedies. Once a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him as a result of intimidation by prison officials."); *Pool v. Klenz*, 2018 WL 1989637, at *2 (6th Cir. Jan. 17, 2018) ("Pool must show that the prison's grievance process was unavailable to him in order to proceed on any of his other claims.") with *Fuqua v. Ryan*, 890 F. 3d 838, 844 (9th Cir. 2018) ("The defendants bear the burden to show an administrative remedy was available and that Fuqua failed to exhaust it."); *White v. Berger*, 709 F. App'x 532, 542 (11th Cir. 2017) ("... the district court ... improperly shifted the burden of proof. ... [Defendants] have failed to place in the record-nor does the record contain-any evidence suggesting that any administrative remedies were available to White when he was no longer incarcerated at the prison."). In the absence of clearer guidance from the Sixth Circuit, the Court assumes for present purposes that Chaney bears the burden of proof on this point.

threatened him, when the threat was made, and what was threatened. He therefore fails to satisfy the threshold requirement that he explain the threat with a minimal level of specificity. *Boyd v. Corr. Corp. of Am.*, 380 F.3d 989, 998 (6th Cir. 2004) ("[A] prisoner who contends that he failed to exhaust out of fear should also have to 'describe with specificity' the factual basis for his fear."). In addition, Gilmore's own allegations refute any suggestion that the alleged threat deterred him from complaining about Chaney's conduct or filing grievances with respect to it. Gilmore alleges that he complained directly to the warden "numerous times" about Chaney, signed a written statement submitted to the BOP's internal affairs investigator after the October 2016 cell extraction, and filed separate grievances about Chaney's conduct on August 2016 and October 2016. [Record No. 1 at Page ID # 4-5, 19; Record No. 29 at Page ID # 322]; *Gilmore v. Ormond*, No. 16-6839 (6th Cir. 2016) [R. 21 therein at p. 7]. In light of Gilmore's own allegations, no reasonable jury could conclude that he felt threatened at all, let alone sufficiently threatened to render the inmate grievance process wholly unavailable.

Gilmore's second argument - that BOP staff prevented him from filing a grievance by withholding the necessary forms or, alternatively, that he did file a grievance but that BOP staff refused to process it - fares no better. As with its predecessor, Gilmore's factual contentions are internally contradictory. While Gilmore first alleges that staff refused to provide him with grievance forms, in the next breath he alleges that he was able to complete and file grievance forms about both incidents [Record No. 29 at Page ID # 322], undermining the viability of these allegations. Regardless, "even if the normal BOP forms used to initiate the grievance process were not available, ordinary letters or notes may be used to invoke the grievance process if necessary ..." *Harris v. PA A. Ndife*, No. 06-CV-223-GFVT, 2006 WL

3469552, at *3 (E.D. Ky. 2006); *Jenkins v. Raub*, 310 F. Supp. 2d 502 (W.D.N.Y. 2004). In addition, a plaintiff's "bald assertion that [the grievance coordinator] refused to give him grievance forms is not enough to excuse the complete absence of evidence that he attempted to exhaust his administrative remedies for the many claims he raised in his district court complaint." *Arbuckle v. Bouchard*, 92 F. App'x 289, 291 (6th Cir. 2004).

Gilmore's conclusory assertion that an unidentified staff member stated that he or she would not process his grievances is likewise insufficient.[3] Rule 56 requires the responding party to point to *specific* facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). In contrast, a "conclusory affidavit" is insufficient because it "bypasses the specific-facts requirement of Federal Rule of Civil Procedure 56 necessary to forestall[] summary judgment." *Stine v. State Farm Fire & Cas. Co.*, 428 F. App'x 549, 550 (6th Cir. 2011). Gilmore's allegation fails to satisfy this baseline requirement. See *Belser v. James*, No. 16-2578, 2017 WL 5479595, at *2 (6th Cir. June 6, 2017) (holding that prisoner's "generalized statements" that prison officials "would not process none of the grievances" was "insufficient to create a genuine dispute of material fact as to whether the administrative process was available" to the inmate). Gilmore also failed to avail himself of means within the BOP's inmate grievance program to seek relief beyond the institutional level. Even if, as he alleges, he filed a grievance at the institutional level which a BOP official refused to process, he was nonetheless entitled to appeal if no timely response

---

[3] As noted above, this allegation – made by Gilmore for the first time in his response – is inconsistent with the allegation Gilmore made two years before in his original complaint: that he made the warden aware of Chaney's conduct by filing a formal grievance, something that could not have come to pass unless the grievance coordinator had forwarded the grievance to the warden for consideration.

was forthcoming, 28 C.F.R. § 542.18, or to file a sensitive grievance with the appropriate regional office, 28 C.F.R. § 542.14(d). Cf. *Belser v. Woods*, 2018 WL 6167330, at *2 (6th Cir. July 6, 2018) (holding that inmate's allegation that grievance coordinator would not respond to his appeals was insufficient to render grievance process unavailable where regulation permitted inmate to proceed to the next step when no timely response to grievance was given). See also *Green v. Haverstick*, 2017 WL 5171244, at *2 (6th Cir. Aug. 30, 2017) (holding that grievance process was not "unavailable" where prisoner was able to file grievances after alleged refusal by prison official to accept grievance).

### III.

Summary judgment is warranted because no reasonable jury could find that Gilmore exhausted his administrative remedies or that the process to do so was unavailable to him. *Mattox*, 851 F. 3d at 590. Accordingly, it is hereby

**ORDERED** as follows:

1. The motion of Lieutenant Leroy Chaney to dismiss Gilmore's Complaint [Record No. 27] is **GRANTED**.

2. Plaintiff Tyganda Gilmore's Complaint [Record No. 1] is **DISMISSED**.

3. This matter is **STRICKEN** from the active docket.

Dated: February 26, 2019.

Signed By:
*Danny C. Reeves*
United States District Judge