UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| TYGANDA GILMORE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 16-286-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| LEROY CHANEY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

*** *** *** ***

Plaintiff Tyganda Gilmore filed this lawsuit asserting multiple constitutional claims against prison officials employed at the United States Penitentiary-McCreary. All but one Eighth Amendment claim of excessive force asserted against Defendant Lieutenant Leroy Chaney has been resolved.

Chaney has filed a motion for judgment on the pleadings, or alternatively, a motion for summary judgment. He contends that Gilmore failed to exhaust his administrative remedies and that he is entitled to qualified immunity on Gilmore's excessive-force claim. [Record No. 64] The matter was referred to United States Magistrate Judge Matthew J. Stinnett for review and the issuance of a Report and Recommendation. Magistrate Judge Stinnett recommends considering the filing as one seeking summary judgment. He also recommends in a thorough opinion that the motion be granted. [Record No. 72] Gilmore has not filed any objections to Magistrate Judge Stinnett's recommendations, and the time to do so has passed.

This Court must make *de novo* determinations of those portions of the magistrate judge's recommendation to which objections are made, 28 U.S.C. § 636(b)(1)(C), but "[i]t

does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Nevertheless, the Court has considered the entire record and concludes that Chaney's motion should be granted.

## I.

Chaney was a lieutenant in the Special Housing Unit at the United States Penitentiary-McCreary in Pine Knot, Kentucky, while Gilmore was there serving a portion of his 188-month sentence for trafficking in crack cocaine. Gilmore was housed at McCreary between June 15, 2016 and December 22, 2016. [Record No. 64-3, p. 12] Gilmore alleged that Chaney used excessive force against him on two separate occasions while Gilmore was housed in the Special Housing Unit. [Record No. 64-2, p. 2]

First, Chaney allegedly used excessive force on August 23, 2016, when he sprayed pepper spray into Gilmore's cell after Gilmore repeatedly refused to submit to hand restraints during a cell extraction. [Calculated Use of Force Video (CUOF) at 7:30-15:00] Bureau of Prisons officers, including Chaney, were making rounds as a part of a standard 21-day cell rotation, and they notified Gilmore he would be transferring cells and sharing a new cell with another inmate. [Record No. 64-2, p. 18] Gilmore refused when asked to submit to handcuffs to make the transfe. He also refused to remove a towel hanging in his cell window. Chaney sought assistance from other officers to remove Gilmore from his cell and induce his compliance.

After securing assistance, and on video provided by the Bureau of Prisons, Chaney discussed the need to secure inmate compliance through confrontational avoidance tactics. Unit Manager Anderson then discussed the fact that they were using confrontational avoidance

techniques because Gilmore would not take down the towel covering his cell window or agree to be placed in handcuffs. [Confrontational Avoidance Video (CA) at 0:56-1:00] Following the on-camera explanation, the officers attempted to retrieve Gilmore from his cell. Gilmore continually refused to submit to restraints or remove the towel from the window. [CA at 2:00-5:00]

When the confrontational avoidance team could not induce compliance, Chaney left and secured authorization to assemble a team for "calculated use of force." [CUOF at 0:20-0:35] After securing authorization, Chaney and other BOP officers returned to Gilmore's cell, where Gilmore was again instructed to remove the towel from the window and submit to handcuffs. [CUOF at 7:30-8:05] But Gilmore continued to ignore commands. Chaney then administered a short burst of pepper spray through the tray slot in Gilmore's cell door. [CUOF at 8:00-8:14] Gilmore continued to ignore the order to uncover the window. [CUOF at 8:19-9:19]

Chaney administered a 2-second burst of pepper spray into Gilmore's cell. [CUOF at 9:30-9:32] Chaney and other officers continued to instruct Gilmore to uncover the window and submit to hand restraints. [CUOF at 10:30-10:41] Again, however, Gilmore continued to refuse to submit to the commands. Chaney then used a pellet-gun style pepper sprayer to shoot approximately eight pepper spray balls into Gilmore's cell. [CUOF at 11:08-11:20] Gilmore responded by barricaded himself under the mattress and yelling at the officers. [CUOF at 12:47-12:55] Chaney responded by shooting more pepper spray pellets into the cell. [CUOF at 13:16-13:29]

Following Gilmore's repeated resistance to commands, officers entered his cell and wrestled Gilmore to the ground, applying hand restraints behind his back. [CUOF at 16:48-

-3-

17:33] Gilmore was taken to the shower to decontaminate, assessed by a medical professional, and placed in clean clothing. [Record No. 64-2, p. 18, 21] Finally, Gilmore was escorted to his new cell. [*Id*. at 18.]

Gilmore contended that he suffered small cuts and bruises on his ankles and wrists from the restraints and that he was struck in the eye by a pepper pellet. [Record No. 64-3, p. 35] He did not seek specific treatment, stating that his injuries he sustained were "nothing [ ] major." [*Id*.] The health assessment indicated that Gilmore did not complain of any injuries and no injuries were noted. [Record No. 64-2, p. 26]

Next, Gilmore alleges that Chaney and other officers "roughed up," punched, and threw him on the ground after he refused to submit to hand restraints on October 25, 2016. He asserts that Chaney asked him to submit to restraints but when he refused, Chaney placed handcuffs through the slot in the cell door. While Gilmore continued to resist the command, Chaney and other officers entered Gilmore's cell and forced him into restraints. After placing him in restraints and transporting him out of the cell, video shows Gilmore struggling against the officers and the officers pushing Gilmore against the wall. [Immediate Use of Force (IOUF) Video at 0:00-0:16] Officers placed Gilmore's head and body against the wall and held him there for a few minutes. [IOUF Video at 0:05-7:49] Gilmore was then assessed by medical personnel. [IOUF Video at 7:55-9:30] The health assessment states that Gilmore originally denied any injuries, but there were "three small abrasions noted around the left wrist area" and, upon examination, Gilmore complained of right eye pain. [Record No. 64-2, p. 39] Gilmore was transported to a new cell without further incident.

Gilmore originally filed this action on December 8, 2016, against Chaney and various other prison officials. He alleged a conditions-of-confinement claim and four excessive-force

claims under the doctrine set forth in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). [Record Nos. 1, 6] This matter has a lengthy procedural history but, as noted previously, the only remaining dispute involves the excessive-force claims against Chaney. [*See* Record Nos. 19, 39.]

Chaney has now filed a motion for judgment on the pleadings or, alternatively, for summary judgment. [Record No. 64] He asserts that Gilmore failed to exhaust his administrative remedies. Alternatively, Chaney contends that Gilmore cannot establish an Eighth Amendment violation, and that he is entitled to qualified immunity.

Magistrate Judge Stinnett submitted a Report and Recommendation in which he recommends that Chaney's motion be construed as one for summary judgment. [Record No. 72] More specifically, he recommends that the Court deny summary judgment on exhaustion grounds because there is conflicting evidence regarding whether Gilmore was prevented from using the prison remedy system. [Record No. 72, p. 12] However, he recommends that the motion be granted substantively because Gilmore cannot establish a constitutional violation based on the undisputed facts and because Chaney is entitled to qualified immunity. [*Id*. at 17.]

## II.

The first issue concerns whether to treat the motion as a motion for judgment on the pleadings or for summary judgment. The undersigned agrees that it should be considered as one seeking entry of summary judgment.

In addressing a motion for judgment on the pleadings, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v.*

*Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)).  But "if matters outside the pleadings are presented . . . and not excluded," the Court must convert the motion to one seeking summary judgment.  Fed. R. Civ. P. 12(d).  When the matter is converted into one for summary judgment, the Court should give all parties notice and the opportunity to respond. *Id*.; *Northville Downs v. Granholm*, 622 F.3d 579, 585 (6th Cir. 2010).

Here, the Court relies on documents and videos outside of the pleadings in rendering its decision.  Further, Gilmore had notice of the likelihood that the motion would be converted into one for summary judgment and the opportunity to respond.  The motion was styled alternatively as a motion for summary judgment and makes references to proof outside the pleadings. Additionally, the Court previously converted a motion from Chaney into a motion for summary judgment and the Court allowed five months of discovery before the motion was filed.  [Record Nos. 48, 72]  Accordingly, the Court agrees with the magistrate judge's recommendation to consider Chaney's motion as one seeking summary judgment.

Summary judgment is appropriate if there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002).  The determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### III.

**A. Exhaustion of Administrative Remedies**

Chaney alleges that Gilmore's claims should be dismissed because he did not pursue an administrative remedy for either the August 23, 2016 or October 25, 2016 incident. [Record No. 64-1, p. 9] He contends that Gilmore conceded he had not fully exhausted his administrative remedies and that any statement by Gilmore that the BOP staff interfered with his ability to exhaust is administrative remedies is unsupported. [Record No. 64-1, p. 11] Gilmore further argues that the BOP has not had a chance to fully review and address the underlying claims against him. [*Id.*]

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is an affirmative defense, and the burden is on the defendant demonstrate that the plaintiff failed to exhaust. *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017). Notably, "[w]hen the defendants in prisoner civil rights litigation move for summary judgment on administrative exhaustion grounds, they must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Id*. "A prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution." *Id*. However, the Court may excuse a lack of compliance if "a prisoner makes affirmative efforts to comply but does not succeed." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). Additionally, administrative remedies are rendered unavailable, and the Court may excuse non-compliance, when "prison administrators thwart inmates from taking advantage of a

grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2006).

Magistrate Judge Stinnett concluded that there were factual disputes regarding whether Gilmore actually submitted grievance forms related to the two incidents and whether he was prevented from submitting the forms. [Record No. 72, p. 13] Chaney provided Gilmore's file, which does not include grievance forms for either the August or the October incident. However, Gilmore testified in a deposition that he tried to complete the grievance forms and that he was either threatened or the prison officials lost his forms. [Record No. 64-3, pp. 60-74] As the magistrate judge noted, Gilmore was inconsistent in his statements regarding whether he was prevented from submitting the forms or whether the BOP was non-responsive to his grievances. But his deposition testimony is sufficient to create a genuine dispute of material fact regarding whether he was prevented from utilizing the grievance procedure.

Gilmore testified that he filled out forms for the August 23, 2016 incident, gave the forms to the unit manager, but that he never received a response. [Record No. 64-3, pp. 60-61, 63] He also stated that the unit manager told him that if he kept talking about staff misconduct they would "put him in the cell again" and "lock him up." [Record No. 64-3, p. 61] Gilmore also testified that he asked for, and later received, grievance forms for the October incident, but the forms were lost. [Record No. 64-3, p. 66] He explained that he tried to resubmit the forms when he heard that the prison did not have a record of his two grievances. [Record No. 64-3, p. 72] Gilmore further testified that prison officials threatened to tell other inmates about a past sexual assault conviction if he tried to fill out the grievance forms. [Record No. 64-3, p. 74]

Because Gilmore's testimony is sufficiently detailed to create a genuine dispute of material fact the Court concludes that Chaney cannot show that "no reasonable jury could find that the plaintiff exhausted his administrative remedies." *Mattox*, 851 F.3d at 590. Accordingly, the motion will be denied on exhaustion grounds.

### B. Excessive Force Claims

Chaney asserts that Gilmore failed to meet his burden of alleging a constitutional claim of excessive force because Chaney did not "maliciously or sadistically" cause harm to him. He contends that the amount of force used was proportionate to the circumstances and that he tried to temper the forcefulness of the response to Gilmore's noncompliance. Additionally, he argues that his actions were neither unreasonable nor excessive, and that Gilmore did not suffer any significant physical harm. Magistrate Judge Stinnett concluded that Gilmore cannot show a constitutional violation and Chaney is entitled to qualified immunity. [Record No. 72, p. 16] The undersigned agrees with the magistrate judge that Chaney's arguments in this regard are well-taken.

"Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Greer v. City of Highland Park*, 884 F.3d 310, 314 (6th Cir. 2018) (internal citations and quotations omitted). A plaintiff must prove that (1) the officer violated one of his constitutional rights and (2) the right was "clearly established" at the time of the alleged violations, meaning that "a reasonable officer would have known that the conduct was unlawful." *Id*. (referencing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). The Court may address the prongs in any order. If the plaintiff cannot make a

showing on one of the prongs, the Court need not address the other. *Bethel v. Jenkins*, 988 F.3d 931, 945 (6th Cir. 2021); *Silberstein v. City of Dayton*, 440 F.3d 306, 320 (6th Cir. 2006).

The Court first considers whether there was a violation of Gilmore's Eighth Amendment right to be free from cruel and unusual punishment. There is both an objective and subjective component to such a claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citation omitted). The objective component requires that the pain inflicted be "sufficiently serious." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). However, while it is helpful in determining if a violation occurred, the amount of pain inflicted is not dispositive because, "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Cordell*, 759 F.3d at 580-81 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)) (alterations in original). The subjective component considers the state of mind of the defendant and focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014).

Courts consider multiple factors in determining whether the subjective component has been satisfied. They include: (1) "the need for the application of force," (2) "the relationship between the need and the amount of force that was used," (3) "the extent of injury inflicted," (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them," and (5) "any efforts made to temper the severity of a forceful response." *Id.* at 581. "In circumstances where lawful orders or rules are being disregarded, prison officials are entitled to use a reasonable amount of force to obtain compliance," including spraying chemical agents or physical force. *Ogle # 257868*

*v. Thompson*, No. 2:05-cv-289, 2006 U.S. Dist. LEXIS 10498, at *8-9 (W.D. Mich. Feb. 17, 2006) (referencing *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992)).

During the August incident, spraying pepper spray into Gilmore's cell was necessary to secure compliance with the BOP officers repeated commands to submit to restraints and ensure the safety of the officers. The force was not excessive in comparison to the amount which was used. *See Ogle #25768*, 2006 U.S. Dist. LEXIS 10498, at *8 (concluding that the plaintiff's noncompliance with the directive to remove a covering from his window justified using chemical agents to compel compliance with the directive). Gilmore repeatedly refused to submit to restraints during a 21-day cell rotation and refused to comply with an order to remove a towel from his cell window. [Record No. 64-2, p. 19] As noted, force can be used to compel compliance with prison directives and to protect officers. *Caldwell*, 968 F.2d at 602.

Chaney used progressive levels of force to compel compliance with the orders. Initially, he requested that Gilmore submit to hand restraints and remove the window covering. However, that request was unavailing. Next, Chaney attempted confrontational avoidance tactics. Those efforts also were unsuccessful. Thereafter, he requested authorization to use "calculated use of force tactics" and used non-lethal pepper spray to ensure that Gilmore complied with appropriate and necessary commands. [CA at 2:00-5:00; CUOF at 7:30-8:05] Chaney also took breaks between rounds of pepper spray to give Gilmore time and opportunity to comply. [CUOF at 8:19-9:10; 10:30-10:41] Finally, the extent of the injuries inflicted during the August incident were minimal. [Record No. 64-3, p. 35]

During the October incident, the physical force utilized was proportionate to what was necessary after Gilmore became combative and tried to break away from the officers after

-11-

being removed from his cell. [Vicon Video at 00:00-00:15] Gilmore's combative actions and his refusal to submit to restraints created a safety concern for the officers, especially during transport from one cell unit to another. The physical force used to control Gilmore was employed so that the transport could be conducted safely and without harm to the officers. Further, the degree of physical control was proportionate and necessary to compel compliance and ensure the safety of the officers. The injuries Gilmore suffered during the October incident were also minimal. [Record No. 64-2, p. 39] There is no evidence that, in either incident, force was excessive or exercised maliciously or sadistically to cause harm.

Regarding the objective component of an Eighth Amendment claim, the Court must examine whether there is any evidence that the injuries sustained by Gilmore were "sufficiently serious to offend contemporary standards of decency." *Cordell*, 759 F.3d at 585. As noted above, Gilmore testified that the injuries he received from the August 23, 2016 incident were "nothing major." [Record No. 64-3 at 34.] He also explained that he merely had small cuts and bruises as a result of the two incidents. [*Id*. at 81-82.] Health reports following both incidents noted only minor injuries. Thus, the evidence of record demonstrates that Gilmore's injuries were not sufficiently serious to demonstrate that common decency standards were violated.

In summary, because neither the subjective nor the objective component of an Eighth Amendment claim can be met based on the undisputed evidence in the record, the Court concludes that Gilmore has not demonstrated a violation of his Eighth Amendment right to be free from cruel and unusual punishment. Chaney is entitled to qualified immunity as a matter of law. Additionally, because Chaney is entitled to qualified immunity, the Court need not address the "clearly established" prong of the Eighth Amendment analysis. *See Saucier v.*

*Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

**IV**.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. United States Magistrate Judge Stinnett's Report and Recommendation [Record No. 72] is **ADOPTED** and **INCORPORATED** here by reference.

2. Defendant Lieutenant Leroy Chaney's motion for summary judgment [Record No. 64] is **GRANTED**.

3. Plaintiff Tyganda Gilmore's remaining claims are **DISMISSED** with prejudice.

Dated: September 28, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky